And we have some extended arguments here as well. We have 30 minutes to decide in the first case. It would be helpful to me to know how the argument is going to be split up. I think that the appellants have told us. I'm not sure the defendants have told us. I'm Douglas Slatter, U.S. Department of Justice. I'll be going first for our side. I'll be taking 20 minutes, and then Mr. Nichols will take five minutes. The last thing I want to say housekeeping-wise is I'm going to be very strict about time, which I'm not usually. So therefore, please watch your time in terms of splitting it up. Thank you. Okay.  Good morning, Your Honors. I'm Douglas Slatter, U.S. Department of Justice. I'm here in our line of them for the plaintiffs and Fazaga. We will split our time as we specified in the motion. I will take the state secrets issues and the issues concerning the federal defendants. My colleague, Mr. Biegbring, will take the individual defendants' issues, and we'll reserve seven minutes for rebuttal. And how much time are you taking? 17 to start. Okay. But that's up to you. No, that's wrong. It's 13 to start, actually, Your Honor. That's why I'm a lawyer. Your Honor, the Supreme Court in general dynamics, which was its most recent ruling under the state secrets privilege, said that Reynolds decided a purely evidentiary dispute by applying evidentiary rules. And so, too, here, the state secrets issues in this case can be decided based on three narrow evidentiary rulings. First, the district court erred in expanding the scope of the government's secrecy assertion to dismiss claims that the government did not move to dismiss under the privilege. Well, under that, the government is obliged to invoke the state secrets privilege, but that's the evidentiary privilege, right? The question of whether the evidence is so pervasive as to necessitate dismissal is not the state secrets privilege itself, right? It doesn't require, for example, that the attorney general invoke that as opposed to the evidentiary privilege. Is that right? Yes, Your Honor. And after general dynamics, there's a sharp line between the Reynolds privilege and then the subject matter doctrine, which is the top of the line. All I'm saying is there's no prohibition on the judge doing this, even if it hasn't been asked for. It may be strange and perhaps unwise, but it's not flatly inconsistent with the state secrets privilege. I guess that's right, Your Honor. There's not a published case where it's ever happened, and there are many published state secrets cases. The only case where we found where there was even sort of a suggestion of it was In re Sealed case. Which one? In re Sealed case in the D.C. circuit, which on remand became Horn v. Huddle. And that case is cited in the Electronic Frontier Foundation's amicus brief at page 12. There, the district court, the director of the CIA had said he thought the information could be segregated, so that portions of it could be presented for litigation. The district court had a broader view, and they reversed that. Now here, the attorney general said that counts one through seven should be dismissed, which we obviously disagree with, but did not think that was true of the rest of the case. And the district court went ahead and dismissed it anyway. So that's all we, you know, for what it's worth, Your Honor. I'd like to spend the bulk of my time focusing on our second evidentiary argument, which is that Congress displaced the state secrets privilege as to information relating to electronic surveillance through Section 1806. Let's start out by telling me exactly what the difference would be in this case if that were true. I mean, we have in-camera submissions. The district court looked at them. We've looked at them. What would be different under FISA and the state secrets privilege exactly? Two critical differences, Your Honor. First, under FISA, the court reviews the evidence to determine whether the surveillance was lawfully authorized and conducted. Those are the words of 1806F. Under the state secrets privilege, the court determines whether the information is properly described as secret for purposes of national security. So there's no merits determination happening under the state secrets privilege, Reynolds privilege, whereas there is under FISA. Second difference, Your Honor, FISA authorizes alternative procedures for where the disclosure of the evidence is, quote, necessary to make an accurate determination of the legality of the surveillance. And we see cases doing this. So, for example, the D.C. Circuit in In re Field case recommends that the district court use what it calls SIPA-like procedures to allow the case to be litigated. The Second Circuit in the Halpern decision, which is a patent case, actually conducts like an in-camera trial on this patent issue. And these are similar kinds of procedures which could be utilized under FISA, whereas, you know, on the government's view of the state secrets privilege, we disagree about this, obviously. But on the government's view, it's absolute. If the information is secret, you have to dismiss the case. It's a completely blunt instrument. So those are the two essential differences between the use of one set of procedures and the other, Your Honor. And I was going to read from the text, but I guess I can just sort of summarize it to say, you know, Section 1806F, it applies whenever any motion or request is made for disclosure of evidence pursuant to any statute or rule. And what the district court said was, oh, well, I think these procedures are limited to the FISA claim under Section 1810. But there's just no statutory basis for that. In fact, it's contrary to the plain language of the statute, which says that these provisions apply whenever, and this is the other part which I think is highly relevant, Your Honor, the attorney general files an affidavit that disclosure of the information would harm the national security. And that's, of course, exactly what Reynolds also says. The attorney general herself has to file an affidavit. But this statute says what's supposed to happen under those circumstances. They're supposed to then be an in-camera and ex parte review to determine the legality of the surveillance. Let me ask you some statutory language questions. I mean, aside from the general question of when does one statute displace another, just in terms of what the FISA 1086F actually reaches, the language you're relying on, I guess, is whenever a request is made by an aggrieved person pursuant to other statutory rules. Now, part of what's going on here, as I understand it, is that it's the government, that, I mean, everyone seems to agree here that the plaintiffs, at least for their prima facie case, do not need to introduce classified material or any state secret material. But the government says they need it for their defense. So how does the statute apply to that? Sure, Your Honor. If the defendants wanted to, and you need to look at two sections then, this one and also 1806C, which is C, just above it. If the defendants want to, say, discover evidence which they think would prove that their investigation was lawful. You would say that this comes under whenever a court or other authority is notified pursuant to subsection C, because you're saying they would have to notify you under subsection C if they want to enter evidence in order to defend the case. Right. In fact, the slight mechanics, just, Your Honor, let's say the individual defendants, but they don't have access to the information either, right? They would make a discovery request, for example, for the tasking to the informant. When they make that request, the government would then say, we have that material, but we think disclosure of it would threaten national security. So that would be a notification under 1806C. When that happens, that would then trigger this set of procedures. And these are very comprehensive provisions, Your Honor. It would be very odd if Congress had intended for this to apply to plaintiff's claims to discover information that would otherwise, the disclosure of which would threaten national security, but then not mean that to apply to the defendant's need for that information. And it clearly was meant to apply to litigate 1810 claims, which is the claim that survived the cross-appeal, right? Our claim under FISA. And again, it would be very strange that Congress would have intended these provisions to apply for the civil liability provision they put in there, but then not to apply it to the Fourth Amendment claim, the First Amendment claims, and all the rest of it. So that is how we would envision it going, Your Honor. The defendants would make that discovery request, and that would then trigger this set of procedures. And what about the third, more amorphous category of, I mean, according to Jepson, there are three categories. There's when you need it for the premeditation case, you need it for defense, and when essentially you're going to run into this evidence, however you try the case, it can't be avoided. I forget what the wording is, but it's something to that effect. How is that covered by this check? I mean, that is covered by 1806S the same way that all other evidence is covered by 1806S. In fact, if anything, the fact that there could be intertwined evidence that relates – well, actually, there's two different issues here, Your Honor. One is, what do you do when there's secret evidence that relates to electronic surveillance intertwined with non-secret evidence that relates to electronic surveillance? That is plainly covered by 1806S. I mean, obviously, in many FISA cases and criminal cases, in all other kinds of cases, there will be some – often be some secret evidence and some non-secret evidence. Are there any cases that you know of, say a criminal case, in which the objection to the criminal surveillance – to the electronic surveillance was not FISA itself and not a Fourth Amendment-based problem, but an equal protection problem or a religious freedom problem? That's essentially what we're arguing here, because with regard to the FISA claim itself, there's a huge overlap with the Fourth Amendment. So what we're really concerned about is the non-Fourth Amendment claims. Is that right? Well, that's what we think, Your Honor. All right. Well, and if that's so, is there any case law which recognizes that this language applies where the challenge is not under FISA or even brought down to the Fourth Amendment? Well, ACLU of Southern California v. Barr, also in the D.C. Circuit, and actually also cited in EFF's amicus brief, is a case where the challenge is to allege surveillance of clients and attorneys' communication. And so there the claim is not just FISA as such. It also encompasses the Fifth Amendment. And what the court holds in that case is that they just look at the language of the statute, and they say what the court is supposed to determine is whether the surveillance was lawfully authorized and conducted. Now, I don't know of another case, although we haven't looked hard in criminal cases, Your Honor, because the government took the position that criminal cases were exempt or that this applied to criminal cases. So perhaps if we did a search, we would find them. Our view was this language does not distinguish between Fourth Amendment claims and other claims. It asks whether the surveillance is lawfully conducted. Obviously, surveillance can be illegal if it is unconstitutional because it's racially discriminatory or religiously discriminatory. And that seems to resolve the matter. Your Honor, I realize I only have, well, 30 seconds left of this portion of time. Let me just briefly discuss something involving the Privacy Act, and perhaps we can discuss more FISA on rebuttal. The Privacy Act claim and also our expungement claims, the government seeks dismissal on independent grounds. And I wanted to discuss those briefly. The Privacy Act, and what's the other one? We seek expungement under each of the constitutional provisions. So the government was seeking dismissal under privacy, and what's the other one you're talking about? The expungement claims, which are really the claims for injunctive relief in the form of expungement of records for violations of the First Amendment, Fourth Amendment, Equal Protection Clause. And Section E7 of the Privacy Act creates really a freestanding obligation on the government to, quote, maintain no record describing how an individual exercises their First Amendment rights. And then it has some exceptions to it, but the government has not argued for those exceptions here. Now, an argument is just that Mr. Sazaga, some— You're not arguing that the law enforcement exception applies? No, they've never argued that, Your Honor. They've only argued that there's no expungement relief available under Section E7 because the FBI can exempt its databases. And that view has been rejected by every circuit court to consider it. But except maybe this one. I mean, my understanding is that this Court's been pretty tight about reading each of the provisions. I mean, to me it's a little odd to read a provision that says you can get damages as saying you can't get an injunction, but we've read it that way, haven't we? Well, Your Honor, McPherson—there's one case about E7 in the Ninth Circuit. It's McPherson v. IRS. They set out a whole process for how to resolve claims under E7 where the person is seeking injunctive relief. The entire case is dicta, including the standard it sets forth if, in fact, there's no injunctive relief available under E7. And it is not the most clearly worded statute, but it is, again, inconceivable that Congress would have intended for the government to have damages for unlawfully maintained records, but not to have to get rid of those records, those same records. So, Your Honor, why don't I stop there. Thank you. Thank you. Thank you, Your Honor. May it please the Court. Peter Biebering for Plaintiffs. And I will be, again, addressing the— Can you speak a little louder, please? Sure. I will be addressing the claims against the individual capacity defendants, including the FISA claims and constitutional claims. And I wanted to start first with the FISA claims, which, of course, the district court denied defendants' motions to dismiss. And that is correct. There's broadly three categories of evidence that fall into plaintiffs' FISA claims that there were unlawful surveillance under FISA. The first is that there was electronic surveillance placed in Fazaga's office in plaintiff Abdel Rahim's home and car by defendants and was maintained when the informant was not present. If their defense is we didn't do it, but they regard that as a state secret, then what? Suppose that was their defense. So, first of all— In fact, there were no such things. Well, with respect to FISA, we would, first of all, argue that— As my co-counsel just argued, first of all, the government did not move to dismiss the FISA claims. I understand that, but I— Kathy, your argument is assuming that we're reaching it. Yeah. And, second, with respect to the preemption of FISA, if FISA preempts nothing else, of course, it preempts plaintiffs' claims under the FISA. And that was the district court's rationale in allowing this claim to continue. And, certainly, with respect to at least that category of claims, the claims that they planted electronic surveillance that operated constantly, not just when the informant was present, there's no question that that violates a reasonable expectation of privacy and states a claim under the FISA. And the court actually need go no further than finding that that states a claim. Why not? Don't we need to find out exactly what does state a claim? I mean, you had different things in your complaint, and why would we just stop by saying, well, something might, but I'm not going to tell you about the rest. With respect to allowing plaintiffs to go forward on their FISA claim, at least that category states a claim. That's enough to allow— So we need to go no further. That's what I was questioning. Well, with respect to the issue of whether to dismiss or to affirm the district court's refusal to dismiss the FISA claim, that is enough. Of course, there are two other categories, at least. The first is the informant's leaving of his electronic recording device, the key fob, at various places around the mosques and other locations when he was not present. Those state a claim. Certainly those are alleged throughout the complaint, that use of the key fob. It is alleged in the complaint that he did this repeatedly, that he detailed that he was doing this in his daily notes, which was read by each of the individual defendants in this case. So they certainly had knowledge of it and acquiesced. It's alleged that they never instructed him not to do so, even though he was informing them that he was doing it. So that's your complaint. Now, again, you would say we don't get into the state secrets because it's FISA. We instead would do a FISA thing. All right. Go ahead. That's right. And with respect to that, that at least states a claim for circumstances where there was a reasonable expectation of privacy. And finally, there is a third category of all the informant's recording of conversation, even to which he was a party, because this Court's cases in Aguilar and Mayer impose on the invited informant doctrine a good faith requirement that investigations using an informant not be for the purpose of targeting First Amendment activity, which, of course, the comprehensive allegations of this complaint allege specifically. Well, reading those cases, it seemed to me that they were talking about activity whose purpose was to target the First Amendment activity rather than targeting the First Amendment activity for some other reason. In other words, is there an allegation here that the reason they were doing this was to get people to stop going to the mosque or to stop praying? Certainly the allegations. I think that may be a distinction without a difference. Certainly with respect to the allegations, the complaint alleges not only that this was a dragnet surveillance of the Muslim community, that the informant was instructed to collect as much information as possible on as many Muslims as possible. He was instructed to target individuals who were particularly devout, for example, who attended morning prayer. He was told by his handlers that Islam was a threat to nationalism. Reading those cases, this bad faith exception is very narrow and is limited to situations in which the point is to get people to stop doing the activity rather than to find out what they're doing. Well, neither case. I would respectfully disagree, Your Honor. I think that what exactly constitutes bad faith under Mayer and Aguilar, I believe, is targeting on the basis of First Amendment activity and not necessarily for the specific purpose of ceasing First Amendment activity. And I believe that even if that narrower definition applies, that it is adequately alleged in the complaint. In my last two minutes, I did want to address the plaintiff's constitutional claims because I think that particularly the analysis bears on plaintiff's state secrets arguments. Plaintiff's theory under the First Amendment is simply the unsurprising assertion that explicit discrimination on the basis of religion, explicitly using individuals' religion as a criteria for targeting them, is subject to strict scrutiny under the Constitution, under the Equal Protection Clause, under the Establishment Clause, or the Free Exercise Clause. And that is plainly exactly what is alleged in this complaint. That's clear from the Court's earliest cases in Miyamoto and Fowler and through the Court's Free Exercise jurisprudence in Employment Division v. Smith, footnote 3, where the Court says, just as we subject to the most exacting scrutiny, laws that make classifications based on myth. But can I ask for help on the state secrets? I mean, it may mean, if it were true, that what we would be looking for would be not a denial of having done it but a justification for having done it. But the Third Circuit just held that it's exactly this issue, as I understand it, that it's either intermediate or strict scrutiny without saying which, but that still leaves a defense for the government and so therefore still yields whatever state secrets defense issues there are. Certainly. We are certainly arguing that strict scrutiny applies, that the use of religion could be permissible if it's narrowly tailored to a compelling interest. But I think the point is that even if a governmental investigation has at some level a valid purpose, the methods of that investigation can still be unconstitutional. And in fact, if plaintiffs are given... But how does that get you to the point that you can litigate this case? That's what I'm trying to find out. It goes to plaintiffs' prematurity argument. If plaintiffs are given the opportunity to develop evidence to show exactly what happened in this investigation by non-state secrets evidence of what the informant was told to do, what information he collected, there's a real chance that plaintiffs can prove an investigation that could not possibly be justified by any legitimate interest. I mean, by analogy, there may be a crime, a murder, for example, where police think that there's some reason to believe that an African-American or African-Americans are involved. That may be a legitimate interest, but that wouldn't justify the police from targeting all African-Americans in the jurisdiction for surveillance. It would justify them, and this is why I have some problem with your argument about how if there's a dual motive, there's an equal problem. It would justify them looking for only African-Americans, not all African-Americans, but looking at African-Americans, not Caucasians, as possible suspects. But, Your Honor, that's exactly the issue. Without understanding exactly what the investigation looked like in this case, the court is put in a position of having to guess about whether the justifications that... It would help me, and I know you're going into your time, to have some vision of how you think this would develop. You have, between Montu's... How do you say his name, Montu? I believe Montay. Montay? Montay, I believe. Declaration, and your lengthy complaint. I mean, you've laid out a very... In large detail, I gather, what you know about what happened. If you knew more, you could say more about what happened, but eventually you're going to get to the point where somebody has to do discovery, right? That's correct, Your Honor. And so, we believe that we can establish our prima facie case, as we've said, but we also believe that there's discovery that we could do without touching on state secrets. I mean, first of all, certainly evidence that we could submit. We could submit more detailed testimony from Montay, testimony from plaintiffs and other community members about what Montay was actually doing during the 14-month course. Well, we could solve all that by just sending it back and having you write everything you know in your complaint. Here's a complaint with everything you know in it. But then what happens next? Well, we also believe that there's discovery that we could... Do you think we could decide the case, then, just on everything you know? Certainly, Your Honors, this court would be in a better position to evaluate the state secrets evidence if there's a full record developed as to what actually happened. If the government's proffered justifications for the case that they are saying are state secrets, if this court could examine those and say, these may be reasons that you acted, but they can't possibly justify the investigation that the evidence shows occurred. But that seems the truth of what all your information. It doesn't give the government a chance to come and say, but that isn't true. But if the government is offering evidence that it is saying is relevant for the defense that is a state secrets doctrine, this court can evaluate whether that disproves plaintiff's allegations... I probably want to save your time. Yes, I will reserve the remaining time. I really need to be talking about it. Thank you. Thank you. Yes, sir. Your Honor, I thought you were going to take a recess. I'm sorry? Yes, we are. I thought you were going to take a recess. We're going to take a break for a few minutes. Thank you. And thank you for arriving. All right. This court stands in a short recess. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. This court resumes its session. Thank you. Mr. Letterman. Hey, at Police at Court, I'm Douglas Letter from the United States Department of Justice, here arguing for the government defendants in the case. With me today is Mr. Anthony Campolino, who handled this case, was the lead attorney for the government at the trial phase. Obviously, what I'm going to be doing is arguing in public today. If the court has any questions involving the classified information, we would need to go into an appropriate secure environment with just the government attorneys. So, I'm operating on the assumption. Let me ask you something. If we thought we needed to do that, could we do it another time? Yes, Your Honor. By phone or something? I'm sorry? By secure phone or something like that? Yes. The court makes arrangements through the court information security office. I think we're not going to do it now. Okay. But, yes, we'd be perfectly happy to do that. We have a confer agent. I don't know. And, if necessary, obviously, we can come here. So, whatever the court desires, we will make ourselves available. Go ahead. I think the key thing here is the most important part of the argument that you've heard so far in response to your questions is my friend, Mr. Alanathan, is focusing on 1806F. As this court is well aware, as judges, you know, you've done it all the time, in interpreting statutes and what they mean, you have to look at what the statute, the entire provision means. You can't just take snippets. You have to see, how does this fit in to the broader statutory scheme? And that is essential here. For example, and I intend to spend some of my time doing that with you, but, for example, I want to hit on one key thing. We heard this morning, you heard, that 1806F here would be triggered by 1806C. That was how the proposal was. Well, that's fascinating because 1806C is entitled notification by United States. And it's about, quote, whenever the government intends to enter into evidence or otherwise use or disclose in any trial hearing, et cetera, certain FISA information. No, information derived from electronic surveillance. Yes, Your Honor. An electronic surveillance, remember, is defined by 1801F in FISA, and I'm going to get to that in a moment. I was only distinguishing the sense of not information that was necessarily gone through the FISA process already. Correct, Your Honor. Exactly right. But, so that means, so Mr. Arulanathan said when the individual defendants are sued and they want to use state secrets in their defense, the government would provide that to them and then C would be brought into play. But no, C is when the government wants to introduce and use evidence. We don't want to introduce and use the state secrets evidence. But you want to use it in defense. No, no, we don't wish to use it in defense. We're saying that would be if we wanted to defend on the merits. Remember here, we're just saying exactly what the state secrets privilege provides. It's a privilege that takes information out of a case. That's essential to understand. But that's circular because if 1806F applies, then there's a different process. It doesn't take it out of the case. No, but with all due respect, Your Honor, it's not circular. The claim here is that we get to 1806F because of 1806C. That's exactly what... I understand that. But if they were right about that, then it wouldn't go out of the case. I mean, you're arguing that it should go out of the case. They're arguing it shouldn't go out of the case. I mean, it's very strange to have the ACLU standing here and telling us that we should be having ex parte in camera proceedings.  It is truly astonishing that they want to litigate for social merit. Well, because their position, which I can understand, is well, that's better than throwing people out of court altogether. Except, remember, and this is why the government is not trying to use the information here. We are not using... I'm having a little trouble with this. You're saying because we may want to use the information and won't be able to because of state secrets is why you should dismiss the case. Exactly, Your Honor. But I think the way you formulated it is precisely right. But we're not...we don't wish to use the information. We are saying, instead, this is governed by the state secrets privilege, as the Supreme Court, this Court, and I think all of the circuits have recognized, we wish to take material out of the case. If we wish to litigate the case on the merits, that would be different. But that's not what we're doing here. So if you look at...and so let's walk a little bit through the statute, and I think you'll see the problems with plaintiff's argument here. First of all, how is electronic surveillance defined? That's 1801F. Electronic surveillance is when there is...and 1801F4 is the key here. That's when there is an interception, use of electronic means to surveil, to gather information. When a warrant would otherwise be needed. Well, remember here, for the overwhelming amount of the material, this involves Mr. Monte's recording during conversations in which he is part. That's a substantive question of whether the Fourth Amendment... I mean, as I understand, there's a Fourth Amendment overlap here, and you have a substantive argument about why, for a large chunk of this stuff, there is...no warrant would be required. And therefore, I gather, you would then say that it then falls out of FISA, even if it were in there before? Is that what you're saying? It falls out of electronic...it's not electronic surveillance, as defined by FISA. So plaintiffs can't say, well, we want to use 1806F, which deals with electronic surveillance, if the vast majority of the material here is not electronic surveillance, as defined by the very statute that they wish to use. Well, they would say, as I understand it, that it's not authorized for other reasons. Not because it's a reasonable expectation of privacy under the Fourth Amendment, but because it has other problems. They may say that, but again, it's the definition... You're saying it's just not in the statute anyway. Precisely, Your Honor. And by the way, again, and I will get to the other provisions in a moment, I just want to remind the Court, remember, the Attorney General here did not, did not assert the state secret's privilege, at this point, over any material that Mr. Montay assertively gathered. That's not the assertion of the privilege here. Now, if we look at where... No. Obviously, it would go, the state secret's privilege goes to the dismissal matter, but remember, we claim state secret's privilege over, the Attorney General did, over who is being surveilled, and again, it's not electronic surveillance, who is being surveilled, what information was gathered, et cetera. It's not what Mr. Montay has done. That's not what we've asserted the privilege over. We have said... Right, I mean, all those pieces of paper with all the... Apparently, he took all kinds of notes, and it's fine to give those notes? Well, it may or may not be fine. That would be a different issue that's not before the Court now. If we ever got to that, we would examine that material to determine whether there are privileges that apply or don't apply. But that's not what we have here. Again, as the Court knows, if you look at the Giuliano classified declaration, that describes what we've claimed state secret's privilege over, and it's not the recordings of Mr. Montay. It's not what we have claimed privilege over. I'm not confirming or denying what Mr. Montay is saying he did. Again, we're not confirming or... We say the First Amendment, the discrimination claims, cannot be litigated because of state secret's material, and I urge you to look at Mr.... Including, although Mr. Montay said he did X, Y, and Z, and we can't confirm or deny that he did X, Y, and Z. Your Honor, no. Read Mr. Giuliano's. If you have not done so, I strongly urge you to. Otherwise, Mr. Giuliano's classified declaration, it doesn't... Thank you. Okay. So let's look at 1806, of which 1806 F is a part. First of all, it's titled Use of Information. So we're talking about use, and again, remember, the government here is not attempting to use the information, the electronic surveillance. We're trying to take it out of the case, and so I'm very glad that I can explain this. Any FISA case, couldn't you say? Our view is that this information should not be revealed, and so we're not... It just seems totally circular to me. No, I'm glad I have an opportunity to explain it. You don't want to introduce it. Correct. But you also don't want to litigate the case because you can't introduce it. Right, and so we're not using it. Remember, that's the language of the statute. If this was a voluntary non-use, wouldn't we just say, okay, fine, don't use it, let's litigate the case? No, because then as Your Honor's questions to Mr. Bybring showed, you have to see could the case be litigated, and that's where... Well, it could be if you're willing to just voluntarily say we don't want to use it, but obviously you're not saying that. You're saying we would otherwise use it, but for the fact that it's a state secret. That's right. So we're not using it. That's exactly what the argument here is. We are not using it. For instance, what 1806F and the provisions that come before it, those apply. Those are very important provisions. Those apply, for instance, in a criminal case where the government is attempting to... wishes to actually use information in the criminal case. That is, electronic surveillance. Or it can be in a civil case. So, for example, the ACLU versus Barr decision was raised, and by the way... What if the government came into a criminal case and said, you know, or an 1810 case, a direct 1810 case, and said, you know, we have a defense here, but we're not going to proffer the defense because it would require using material that would otherwise be subject to 1806F, and we don't feel like doing 1806F. So dismiss the case. Your Honor, I want to make sure I heard you correctly. You said in an 1810 case? 1810 does not apply against the United States. Remember, that's what this Court held in El Jaramillo. There's no waiver of sovereign immunity, which, again, shows why... And there's case laws of the contrary, too, from other circles. I'm not aware of any case that says 1810 does apply. But, again, the law of this circuit is absolutely clear. But, no, I'm not aware of any opposing precedent on that. So 1810 can't apply against the government. So that's not what is involved here. And, by the way, we'd be very happy if you do pay attention to the ACLU versus Barr case, and you'll note there that what that involved originally was a case that came out of this circuit, Hamid, where the government, in an immigration case, did notify, did indicate that there had been FISA surveillance. And then the government indicated how it might or might not use the material. But it gave the notification. The district court and this court then litigated that. But then the ACLU tried to go to D.C. to get a different answer. And, again, Judge Randolph's opinion for the D.C. circuit, I think, is highly illuminating here because it says there is no right under FISA to attempt to force discovery of whether the United States has or has not engaged in illegal electronic surveillance. So that's a very powerful case, actually, for the United States. So, if you look, 1806A is complying to minimization procedures. That's obviously when there has been electronic surveillance, which, as I say, in the main here, there obviously has not. B is a statement about disclosure. C is notification to the United States when the United States wishes to use material. D is when states wish to use material. E is a motion to suppress when the person against whom the information is being used wishes to suppress that material. That's not what's happening here. So F comes after these sections and obviously relates to them. It's not some sort of freestanding provision that Congress said we're going to create a new cause of action. And if I might, I think the best way of... What does it mean by a request made by any agreed person pursuant to any other statute or rule of the United States  Your Honor, as we pointed out in our brief, that provision is actually for the... Congress put that in for the protection of the government because Congress was concerned that litigants might try to avoid, if a matter were going to be litigated about electronic surveillance, might try to avoid the procedures here that allow for ex parte, in camera, litigation about the validity of the electronic surveillance. And this is discussed in our brief. We cite how the legislative history shows that. So that doesn't help them at all. If anything, it's the opposite. Yes, if you think the legislative activity limits the language of the statute, but the language of the statute doesn't say that. Right, but the language of the statute, and again this is obviously nothing new to Your Honors, the language of the statute has to be understood and read in the context of the rest of the provision, the rest of the whole statute. And it doesn't match up. There's also a lot of legislative history, as I understand it, that says they're trying to kind of cover the field of any circumstance in which there is electronic surveillance. But all tied to electronic surveillance or use by the government. There is nothing, there is nowhere in the legislative history or the language of this statute that talks about the President's and the Executive's authority to exercise constitutional authority to protect national security of the United States. It's not here. No word about the state secret's privilege. This is a little to the side because it really hasn't been briefed as such, but I am wondering what exactly a state secret is. Can you give me a primer on, I mean, in most of the cases there was some, I mean like the extraordinary rendition cases, and so on, you have the direct connections to foreign activities. So, on the other hand, I assume it wouldn't be a state secret that you're investigating the mafia. That's correct, Your Honor. I don't think that would go to national security at all. Yes, but I'm trying to understand what does then. I mean, what's the line? Well, for example, in this case, and again, I'm limited in what I can answer, the Giuliano Declaration. Clearly, with regard to, I mean, we've seen a lot of terrorist activities recently, and there are some of these people who seem to have connections to foreign people, and some of them who just pick stuff up from the Internet and go off and do it. Is the second category of people investigating them, is that a state secret? If you're investigating, let's say you're investigating ISIS supporters in the United States who never stepped foot out of the United States, or even stepped foot out of it, but weren't part of some international organization and didn't do anything abroad, is that all a state secret? Your Honor, we depend very much on the specific circumstances. Remember, the Supreme Court and this Court have very wisely said that this is to be an extremely narrow privilege that can only be asserted... That's why I'm trying to see how it's different if you have a criminal group here, which is very dangerous and very organized and affects our security, but has no direct foreign activity or connection. And, I mean, do we agree that that's not what we're talking about? Your Honor, in a lot of state secret cases, I'm trying to think of any that have involved purely domestic individuals involved in purely domestic with no connection overseas. I'm having trouble thinking of any. Now, the Supreme Court made clear it can't involve military, so I suppose it could. So then the question becomes, you know, if they like to read things on the Internet from Imams in Egypt, I'm just having real trouble seeing where the line is in this really difficult situation that we're in now. It is very difficult, and as you know, this Court and the Supreme Court have said use of the state secret privilege is to be kept at a minimum, and it is a harsh remedy, and Attorney General Holder's policy says it's only going to... Nobody's ever explained what it is, so how can we start making judgements? I'll tell you exactly what it is. The state secret privilege is, and by the way, opposing counsel wants to make it seem like it's just, you know, something, a minor little common law thing. U.S. v. Nixon, the Supreme Court described that it's a constitutionally based privilege, and El-Masri, the Fourth Circuit, then reiterates this. It is a constitutionally based privilege to protect national security, foreign affairs, military activities of the United States that are best not litigated. And, for example, Your Honor asks, is it purely domestic? And I did think of one when it could be. The Supreme Court didn't use the term state secret privilege, but in Weinberger, the case that we cite, it involved whether the Navy was storing or capable of storing nuclear material. That was military. Correct. Exactly. So we know military, but aside from military. Well, Your Honor, the best thing I can do, again, is refer you... Mr. Giuliano discussed this at great depth, why there's state secrets material in this case, and that's the... And you can look at the various other cases where it has been upheld, El-Masri, Jefferson, etc. So it is a constitutionally based executive power, and that's key because, remember here, we're being told that Congress, while never saying so, passed stealth legislation to fool the president, to bushwhack him and say, by the way, you just lost the state secrets privilege for electronic surveillance matters. That's not how our system operates. We operate the... That is true with regard to challenges to... Are you arguing that even if FISA would otherwise apply, and it was electronic surveillance under FISA, you could still assert the state secrets privilege over the top of it? Your Honor, it's a very good question, and the answer is it wouldn't come up. And let me explain why, because I think it's very important. If 1806F is interpreted properly, as we say, this will never come up, because the Supreme Court made clear in Reynolds, and reemphasized in General Dynamics, that government cannot use the state secrets privilege offensively. We cannot say we're trying to put somebody in jail, or we're suing somebody and trying to recover money, and say there's key information here that supports our case, but we're not going to use it, and if there's key information that hurts our case, we're going to keep it out. The Supreme Court said you cannot do that. Can I ask one last question, because I think you're running low on time? Yes. Are you defending the district court's ruling with regard to the Fourth Amendment and the state secrets? In this sense, yes, Your Honor. We did not move for dismissal of the Fourth Amendment claims, but as we understand what the district court did, the district court basically said that the plaintiffs pled themselves into the state secrets privilege, because the plaintiffs say on their Fourth Amendment claim, as I read it, they're saying it really does involve their religious discrimination claims. That's part of it. Right, but that seems to be a key part of it. But it's only part of it. But as I said, as Your Honor well knows, we did not move to dismiss on that ground, but I think the judge's ruling can be supported. I don't want to cut off my colleagues. Obviously, there are more questions. I'm happy to answer them, but Mr. Cody and Mr. Nichols, thank you, Your Honor. Your Honors, good morning. May it please the Court, we're going to change the order just a little bit. My name is Alexander Cody, and I represent three of the individual defendants, Pat Rose and Kevin Armstrong, who are in the courtroom, and Paul Allen as well. I want to speak briefly about the FISA claim that was spoken about by Mr. Biebring. Mr. Biebring divided the FISA claim into three categories, and that's exactly the right way to analyze this. The district court did not do that, and that's where the error is below. Let me speak in the order that Mr. Biebring offered. He first mentioned that someone planted devices in Mr. Abdel Rahim's car or phone or home or in Mr. Fezaga's office, and he claims that that would be a violation of FISA if it was done without a warrant. The problem is there's no allegation that any of the individual defendants in this case had anything to do with those bugs. The allegation is only that on information and belief, they think that's what happened, but they don't know who did it. They don't allege who did it, and they don't allege that it was Mr. Montay who did those things. And Mr. Montay's conduct is the only basis for the FISA claim in the plaintiff's complaint. You can see that right in the paragraph 253 of the First Amendment complaint, and it says that the FISA violations were committed by Mr. Montay at the direction of Agents Armstrong and Allen. So it's simply outside this litigation, those allegations. They're unsupported. It's not these defendants, and they're not within the confines of the complaint. Well, unsupported is a complaint. By unsupported, I mean not alleged. It's just not alleged that these defendants had anything to do with that alleged conduct. That was the first category Mr. Budin spoke about. He also spoke about the personal recordings of Mr. Montay while he was in the mosque. And this court has been abundantly clear, as recently as the Wakumwa case from just a few years ago, that the invited informant doctrine means that the people who are recorded have no reasonable expectation of privacy. When you are speaking to someone and they're wearing a wire, it's not a search. My understanding is their argument is that this is a church or a religious location in which it is even religiously prescribed to eavesdrop and in which there are signs up saying no recording and so on, and that therefore the setting creates a reasonable expectation of privacy that might not otherwise exist. That's the claim that they've made. But there's no case that's ever held that the officer's motive in... What is motive? I didn't say anything about a motive. Well, in the location, the cases are clear that the location doesn't matter when you're talking about the invited informant. No, the location obviously does matter. Unless they came into your house and did the same thing. In the Wakumwa case, it was a house, and it was audio. Because they came in knowing who they were, or at least their body was allowed in. That's right. When you speak to a person, the court has held, and Wakumwa and the Supreme Court has held as well, you have no reasonable expectation of privacy that that person cannot relay what you've said. Do you really believe that? That's what the case is holding. It's a stark holding, I agree, but it is the law of the land, and it's what the court is obligated to follow, especially in this case, which is... If I'm someplace and I'm whispering to somebody else, and they happen to be wearing a wire, obviously I'm trying to protect it. It falls from the same reasoning that that person could be summoned to the witness stand and testify as to what you'd said. It's the same reasoning. If you voluntarily disclosed it, that's a waiver of your expectation of privacy. And the courts have been very clear on that. With respect to the invited informant, the third category, of course, is these unattended recordings where Mr. Montay allegedly left a device behind. There's two problems with that argument. The first argument is that FISA violations require intent. Section 1809 says that you must intentionally surveil someone. If Mr. Montay left the device behind but no one told him to do it or intended him to do it, it's not a FISA violation. Well, and the allegation there is they knew I was doing it and they didn't tell me to stop. The allegation is that he wrote down on a piece of paper that he did it. There's no allegation anyone intended him to do it or wanted him to do it. And, in fact, we know from the government's briefing in this case that he signed a contract agreeing that he would never do that. So the allegations are simply not there. And, again, this is a qualified immunity case, and the balance of the inference has to go to the individual officers in that scenario. With my limited time, I want to make one minor point about the— Well, you have such limited time that your colleague is not going to be able to speak if you can't speak. And I'm going to go as quick as I can without going too fast, Your Honors. I want to speak briefly about the notion that strict scrutiny should have governed this inquiry here. The plaintiffs put forth the theory that the Larson case and the Lukumi case control, and they require strict scrutiny to apply. But they also admit, on page 86 of the brief, that no court has ever held that. No Supreme Court case has ever held that. In this circuit, the cases governing the standard of review for searches that are—allegedly have bad motives are Vernon, which did not apply strict scrutiny, Mayer and Aguilar, which applied only good faith, as Your Honor noted earlier in the argument. And, of course— What is your understanding of what good faith means? The Mayer case— Also, there's a weird discussion in one of those cases about the Fifth Amendment. Is this the Fourth Amendment, or the Fifth Amendment doesn't matter? I'm sorry? I didn't understand. There's a weird discussion in one of those cases about the Fifth Amendment as opposed to the Fourth Amendment. And I don't know what that has to do with anything. Well, it applies here because the Mayer case draws two good faith requirements, one for Fourth Amendment searches, but of course in vitamin form it's not a search, so that doesn't help them. And the other is for the investigation, which is— But Aguilar, is the source of this good faith notion the First Amendment, or what is it? It's not clear. It seems to be the Fifth Amendment, but it's not entirely clear. I'm almost out of time. The only thing I would like to close with is the case cited by the plaintiffs most recently, the Hassan case that came out last week from the Third Circuit, also doesn't apply strict scrutiny. So no case applies strict scrutiny. And given that no case has ever held that, it certainly can't be the case that these officers were expected to know that that was clearly established law nine years ago when they engaged in the surveillance. Okay. You can now let your friend with 34 seconds, but I'll give you a minute and 34 seconds. I'll do this very quickly. Good morning, Your Honor. Carl Nichols on behalf of individual defendants Stephen Tidwell and Barbara Walsh, two individuals who, like the other individual capacity defendants, are sued for damages and damages only for their alleged involvement in the investigation alleged in the complaint. The crux of that complaint, of course, is that the FBI, including the individual defendants, investigated plaintiffs because of their religion. In the normal course, the individual defendants who are defending themselves against damages claims would be entitled to attempt to disprove that claim by showing, one, that they did not in fact undertake any investigative action based on religion, whether religion was, as plaintiffs alleged in their complaint, the sole factor. Is that the defense? That is one of the defenses that would be available to us. I'm not asking you that. I'm asking you, is that the defense? So I don't know, Your Honor. Problems with the whole state secret. Because I assume you're getting to the state secret question, right? Yes. And the D.C. Circuit in the In Real Seal case was very emphatic about the fact that it has to be an actual meritorious defense, not a possible defense or a plausible defense or a colorable defense, which means that the district court and or us would have to decide on the defense. And we certainly can't do that if you don't tell us if it is your defense. And that is an argument for at least getting to the answer stage in this case. Why shouldn't we be doing at least that? So an answer would be particularly problematic because plaintiffs allege, for example, that we undertook the investigation here because of plaintiff's religion. And for us to deny or to explain, in fact, the reasons for the investigation, would require us to disclose the very matters over which the government, not the individual capacity defendants, but the government. I just said deny. Your Honor, okay, so let's imagine that we could even answer the complaint. And let's just assume that for the sake of argument. When this case either goes to discovery or to trial, my clients have an interest. It's a question of whether we're supposed to be actually looking at the defense, not just imagining it. Sure, I understand. I think the cases are actually a little bit all over the map and whether you need to determine whether the defense is actually valid. Well, the D.C. Circuit, we don't have one as far as I know. And I think actually there is language in Jefferson that says valid defense. Yes. And the D.C. Circuit was emphatic about this. Right. So we aren't presently able on the public record to tell you which defenses we do in fact have as opposed to those that we think we have and would like to litigate. I'm going to have to stop you. Thank you very much. Thank you. Your Honor, we don't need to know the true reasons or whether there actually were, you know, bugs in these offices and things like that. We need to know the informant's tasking, which Mr. Letter has made clear, should not be a state secret. It would be odd if it was, given that they disclosed that to him. And in addition, his surveillance notes, the notes that he took and gave them, and the actual audio and video surveillance. From that, you could figure out whether this is a predicated or instead a dragnet form of surveillance. So at least give us the chance to actually get that evidence over which they have not asserted privilege and then see if we can make out our discrimination claim, our Fourth Amendment claims, our Privacy Act claim, which they did not move to dismiss. So that's the first thing. What sense do you think they haven't asserted? I agree that it's a little unclear to me what they're asserting the privilege on, because he said he wasn't asserting the privilege over what Montague did. Your Honor, excerpts page 162, they say counts one through seven. The Privacy Act is count eight. They didn't assert it there. As you, Your Honor, said, Aguilar and Mayer create some blurring with respect to one aspect, you know, the good faith exception to invited informer of the Fourth Amendment claim. We have plenty of other Fourth Amendment claims. When you leave the key fob and go somewhere else inside the mosque, you don't need anything about invited informer to figure out that that is a violation or is alleged as a violation of the Fourth Amendment. That key fob goes to people's offices, Mr. Fezaga, who is here. It ends up in his office recording psychotherapy conversations that he's having with people. That is a violation of the Fourth Amendment, totally apart from anything about invited informer. Nobody ever moved to dismiss those claims under state secrets. Those claims should survive. Now, in addition, Your Honor, I want to walk through FISA just for, you know, a minute here. It couldn't be more circular what Mr. Letter is saying. If they don't want to introduce the evidence, then don't introduce it. We'll move for summary judgment, and we're good to go. So obviously they do want to introduce it. The individual defendants— They would have wanted to introduce it if it were a state secret. Right, but 1806F, Your Honor, it speaks specifically to the attorney general filing an affidavit saying that the disclosure of the information would threaten national security. That's the trigger in 1806F. How could that not be speaking to the state secrets privilege? And that's the reason why—the reason I mentioned 1806C, Your Honor, is because if the individual defendants want to use this evidence, they need to make a discovery motion. And when they make that motion to the government, then the government under 1806C now has to disclose information arising from electronic surveillance. And then what happens then? They say, we can't. The attorney general files their affidavit, and then you get the procedures under 1806F. You know, in his account of legislative history— I would just commend, Your Honor, to the EFS amicus brief— it is replete. The statute arose out of domestic surveillance abuse that the Church Committee described in great detail. It's very similar, unfortunately, to the things that we allege in the complaint. And there's plenty of electronic surveillance, even as defined in a technical way under the statute, for the reasons I gave you earlier. Even if there's no— A body of law secret, though it may be, in the FISA court of what's a state secret? Or what's a national security interest? I'm not aware of anything except Jefferson says it can't be classified. Right. It's not necessarily classified. Right. And, yeah, sorry, not necessarily classified. But because of the language in FISA, the FISA court must deal with it all the time. Yeah, I don't know, Your Honor. This is why I think, Your Honor, this is such a critical question. If counterterrorism reasons are a state secret, a huge swath of the FBI's conduct is now immune from governmental conduct. Because then, even if it's true that this is a dragnet surveillance operation on the basis of religion, we're never going to get a ruling that that is illegal. It's never going to happen. And if you look at footnote 17 of our opening brief, we talk about how drug cartels are national security. I mean, the government has made the claim it's counterterrorism. Immigration, in some situations, has been said. Just people crossing the border has been said. So where are we going to get a limiting principle here, Your Honor? It's highly problematic. And the simplest way to not deal with those here is to rule that 1806F governs this set of procedures. Thank you very much for a very useful argument in a very complicated and interesting case. Thank you, Your Honor. The FISAGA versus Federal Bureau of Investigation is submitted, and we will take a break.
judges: Gould, Berzon, Steeh